J-S39014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWIN DAVIS | : | |
| | : | |
| Appellant | : | No. 230 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 13, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004855-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWIN DAVIS | : | |
| | : | |
| Appellant | : | No. 231 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 13, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002873-2018

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: FEBRUARY 14, 2023**

Edwin Davis brings these consolidated appeals seeking to overcome his designation as a Sexually Violent Predator ("SVP") and to obtain resentencing for a judgment of sentence that he claims to be excessive. We affirm.

For purposes of this appeal, the facts underlying Davis's convictions are uncontested. On March 30, 2018, victims B.O., age thirteen, and V.O., age

twelve, were at their home when Davis, age 43, approached them and struck up a conversation. Davis managed to exchanged phone numbers with both girls and left the area. However, he immediately started texting B.O. and asked her to meet him. B.O. refused the invitation because she was going to go for a walk with her friend that evening. As B.O. was returning home from the walk, she came across Davis in an alley. Davis proceeded to physically attack B.O. and then penetrated her vagina with his fingers and then his penis. Davis also forced his penis into B.O.'s mouth. B.O. managed to get off the ground and run out of the alleyway.

As she left the area, B.O. came across Megan Bigler standing outside of her home. B.O. told Bigler that she had just been assaulted, and Bigler directed B.O. to run home while Bigler contacted the police.[1] When B.O. got home, she reported the incident to her mother. B.O.'s mother and father immediately took B.O. to the hospital.

Meanwhile, Davis had also been texting V.O. from the time the two exchanged numbers earlier in the day. After B.O. and her parents left for the hospital, V.O. texted Davis asking why he had raped her sister. Davis responded by asking V.O. to send him pictures of her body. He also made repeated references to his penis and invited V.O. to have sexual contact with

---

[1] Bigler came across Davis in the alley and remained on the 911 call until police arrived. Although police confirmed Davis's identity and phone number, Davis was permitted to leave because the police did not know the identity of the victim.

him. V.O. sent multiple texts to Davis refusing his requests and reminding him that she was twelve-years old. Undeterred, Davis appeared at V.O.'s home, tried to gain entry, and began throwing rocks at the window. V.O. called the police and Davis was arrested.

Regarding his contact with B.O., Davis was charged at trial court docket number 2873-2018 with rape, involuntary deviate sexual intercourse, unlawful contact with a minor-sexual offenses, aggravated indecent assault of a person less than 16 years old, corruption of minors, indecent assault, and sexual assault. For his contact with V.O., at trial court docket number 4855-2018, Davis was charged with unlawful contact with a minor-sexual offenses, criminal solicitation-rape of a child, criminal solicitation-involuntary deviate sexual intercourse with a child, and criminal solicitation-child pornography.

The cases were consolidated for trial. On June 23, 2021, a jury convicted Davis on all counts. The trial court ordered the preparation of a presentence investigative report and an assessment by the Pennsylvania Sexual Offenders Assessment Board ("SOAB") for a determination of whether Davis fits the criteria of an SVP.

On December 13, 2021, the trial court conducted an SVP hearing and a sentencing hearing. At the SVP portion of the hearing the Commonwealth presented the report and detailed testimony of Robert Martin Stein, Ph.D. ("Dr. Stein"), a licensed clinical psychologist and member of the SOAB. At the conclusion of the SVP hearing, the court determined that the Commonwealth

had met its burden of proving, by clear and convincing evidence, that Davis should be classified as an SVP. Immediately after the trial court reached its SVP conclusion, the court sentenced Davis to serve an aggregate term of incarceration of thirteen to forty years for the crimes against B.O. For the crimes against V.O., the trial court sentenced Davis to serve an aggregate term of incarceration of six and one-half to twenty years. Further, the trial court directed that the sentences for each victim were to run consecutively to each other, which resulted in a total aggregate sentence of nineteen and one-half to sixty years of incarceration.

Davis filed a timely post-sentence motion that the trial court denied on December 28, 2021. This timely appeal followed. Both Davis and the trial court have complied with Pa.R.A.P. 1925. Davis now presents issues questioning whether the Commonwealth properly established that he is an SVP and whether the trial court abused its discretion in fashioning his judgment of sentence.

Davis first argues that the trial court erred in finding that he is an SVP. *See* Appellant's Brief at 17-21. Davis contends the Commonwealth failed to present clear and convincing evidence to support the finding. Davis claims the trial court ignored the fact that his underlying struggle with alcoholism was present throughout his criminal history and contributed to his prior criminal offenses. He further alleges that his prior sexual offenses should be discounted

from consideration because, as indecent exposure convictions, they did not involve any physical touching. We disagree.

When considering the sufficiency of the evidence to support an SVP designation, we apply the following standard of review:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is an SVP. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

***Commonwealth v. Hollingshead***, 111 A.3d 186, 189 (Pa. Super. 2015) (citation and brackets omitted).

SORNA[2] defines an SVP as an individual who has been convicted of one of the enumerated offenses, and "who is determined to be a[n SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. Further, an act is considered "predatory" under SORNA if it is "directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." ***Id***.

---

[2] SORNA stands for Pennsylvania's Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10-9799.41.

Section 9799.24(a) of SORNA provides that "a court shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S.A. § 9799.24(a); *see also id*. § 9799.12 (defining sexually violent offense). Following the entry of such an order, the SOAB is responsible for conducting an assessment to determine whether the individual should be classified as an SVP. *Id*. § 9799.24(b). The assessment must consider the following factors:

> whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending.

*Hollingshead*, 111 A.3d at 190 (citation omitted); *see also* 42 Pa.C.S.A. § 9799.24(b)(1)-(4). After the SOAB completes its assessment, the trial court holds a hearing to "determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n SVP]." *Id*. § 9799.24€(3).

Here, the trial court observed that the record "demonstrates that Dr. Stein carefully considered each required statutory factor and each element of the definition of [SVP]. The record also demonstrates that [the trial judge]

carefully considered the evidence presented, including the role that [Davis's] prior sexual offenses played in Dr. Stein's opinion that [Davis] should be classified as a[n SVP]." Trial Court Opinion, 4/3/22, at 14. Our review of the record is in concord with these observations.

During the SVP hearing, Dr. Stein offered detailed testimony regarding his assessment of Davis. Addressing the initial seven factors, Dr. Stein noted that this matter involved multiple victims, Davis used physical and verbal force, the sexual contact was oral, vaginal and anal, there was no relationship between Davis and the victims, as they were strangers, and the victims were 12 and 13 years old. *See* N.T., 12/13/21, at 10-11. These five assessment factors suggest an SVP classification. The remaining two factors offer some mitigation as Dr. Stein noted there was no unusual cruelty involved in the crimes and the victims were of normal mental capacity. *See id*. at 11.

Dr. Stein also addressed the three factors pertaining to Davis's prior offense history. In doing so, he reiterated the details of Davis's sexual and nonsexual criminal history, which dates back approximately twenty years and began as noncontact crimes and escalated to the crimes that involved physical contact with a minor. *See id*. at 11. Regarding completion of prior sentences, Dr. Stein observed that Davis has a history of probation violation. *See id*. at 11-12. The doctor further observed that, in relation to a sexual offense in 2014, Davis was admitted into and unsuccessfully discharged from sex offender treatment. *See id*. at 12.

The next four factors concern the characteristics of the individual being assessed. Dr. Stein offered testimony reflecting upon Davis's age in relation to that of the victims, evincing a difference of thirty years. *See id*. Also, Davis has reported the use of marijuana in the past. *See id*. Further, Dr. Stein discussed the fact that Davis had previously been prescribed anti-depressants that suggests a degree of depression. At this junction, Dr. Stein noted that on a prior occasion Davis remarked that he had a history of difficulty with alcohol. *See id*. Dr. Stein offered the following testimony addressing the behavioral characteristics contributing to Davis's conduct:

> The course of conduct since 1996 is consistent with sustained sexual deviance, including sexual misconduct that victimized others, which would be the indecent exposure offenses in 1996 and 2014. The 2015 evaluation noted deception as a primary defense mechanism. He was repeatedly deceptive with the victims in this case and with authorities in the instance offense, also consistent with antisocial traits.

*Id*. at 12-13.

Finally, Dr. Stein listed the following factors associated with a greater risk of Davis reoffending: "having four or more sentencing dates in the past, having a prior sex offense, having a prior noncontact sex offense, having unrelated victims, and having stranger victims." *Id*. at 13.

Dr. Stein summarized his analysis of the factors with the conclusion that "[t]here is sufficient evidence for the diagnosis of Other Specified Paraphilic Disorder, nonconsent, based on a pattern." *Id*. As such, Dr. Stein opined that Davis "meets the criteria to be classified as a[n SVP]." *Id*. at 15.

Regarding Davis's allegation that the trial court ignored the fact that his underlying struggle with alcoholism was present throughout his criminal history, we note that on multiple occasions Dr. Stein offered testimony about the general use of alcohol and Davis's specific use of alcohol. **See** N.T., 12/13/21, at 13, 18-20, 25, 26-27. In addition, defense counsel also argued that "alcohol seems to be the consistent trigger" throughout Davis's history. **Id**. at 30. Accordingly, the trial court was quite aware of Davis's history with alcohol when it made its conclusion concerning Davis's SVP status.

Concerning Davis's claim that his prior sexual offenses should be discounted from consideration because, as indecent exposure convictions, they did not involve any physical touching, Dr. Stein disagreed: "[t]he two prior indecent exposures, and the fact that this case represented two additional victims and an escalation of offending, compared to the previous offense." N.T., 12/13/21, at 23. Dr. Stein reiterated that all the criminal acts involved nonconsenting sexual behavior, and the pursuit of females without their consent. **See id**. at 23. Also, the crimes escalated in nature over the course of time. **See id**. at 23-24. Again, the trial court was well-aware of the nature of the crimes committed over the course of Davis's criminal history and knew that the severity escalated, and the age of the victims decreased. To the extent Davis contends his prior criminal acts should not have been considered in assessing his status as an SVP, this argument is not compelling as it would require an incomplete assessment of the statutory factors.

In summary, the trial court credited Dr. Stein's testimony and his opinions regarding the criteria necessary for designating Davis as an SVP. ***See*** Trial Court Opinion, 4/4/22, at 13. The court stated, "[t]hroughout his testimony reviewing the required statutory factors, Dr. Stein clearly and convincingly addressed all of the elements required to show that [Davis] meets the definition of [an SVP]." ***Id***. We may not disturb the trial court's credibility determinations on appeal. ***See Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa. Super. 2006) (stating that "[i]t is not for this Court to overturn the credibility determinations of the fact-finder.").

Upon review, we conclude that the evidence presented at the SVP hearing, viewed in the light most favorable to the Commonwealth, supports the trial court's finding that Davis should be classified as an SVP. ***See Hollingshead***, 111 A.3d at 189. As the trial court observed, "Dr. Stein went to great lengths to explain why [Davis's] conduct was predatory and discussed why [Davis] is likely to reoffend." Trial Court Opinion, 4/4/22, at 13. Our review confirms that Dr. Stein's testimony, which was credited by the trial court, was sufficient to support his conclusion. Accordingly, we cannot grant Davis relief on this issue.

Davis last argues that the trial court erred in fashioning his sentence. ***See*** Appellant's Brief at 21-30. Davis claims that his consecutive sentences, the aggregate of which resulted in a sentence of nineteen and one-half to sixty years, is so manifestly excessive as to constitute an abuse of discretion. He

further claims that the sentence ignores his rehabilitative needs precipitated by his apparent addiction to alcohol. Therefore, he contends the trial court failed to consider pertinent factors in creating his sentence.

Our standard of review is one of abuse of discretion. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

It is well settled there is no absolute right to appeal the discretionary aspects of a sentence. *See Commonwealth v. Hartle*, 894 A.2d 800, 805 (Pa. Super. 2006). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *See Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

- 11 -

***Moury***, 992 A.2d at 170 (citation and brackets omitted).

Here, the first three requirements of the four-part test are met. Davis brought an appropriate appeal, filed a post-sentence motion, and included in his appellate brief the necessary concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). We next determine whether he has raised a substantial question requiring us to review the discretionary aspects of the sentence imposed.

Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. ***See Commonwealth v. Kenner***, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. ***See Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006). Rather, an appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. ***See Commonwealth v. Ferguson***, 893 A.2d 735, 737 (Pa. Super. 2006).

In his Rule 2119(f) statement, Davis argues the trial court abused its discretion by failing to consider certain mitigating factors, including Davis's rehabilitative needs, when it imposed consecutive sentences that resulted in an unduly excessive sentence. ***See*** Appellant's Brief at 13-16. This Court has held that an assertion that a sentence was excessive and that the trial court

failed to properly consider the factors set forth in 42 Pa.C.S.A. § 9721(b)[3] raises a substantial question. **See Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). **See also Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question") (internal citation omitted). We therefore grant permission to appeal and proceed to review the merits of this issue of Davis's sentencing claim.

In his appellate brief, Davis argues that the trial court "glossed over [his] history with alcohol, failing to recognize that alcohol played a major role in [his] offense history, including the current offenses." Appellant's Brief at 27. Specifically, Davis offers the following concerning his history with alcohol:

> The Presentence Investigation revealed that Mr. Davis likely has had a significant problem with alcohol. He self-reported that he began drinking at age 21. By age 31, he increased his usage so much that he was consuming a 6[-]pack of beer every few days. He was also frequently drinking liquor at that time. Although Mr. Davis reported his drinking decreased around age 38, he very likely still had a significant alcohol problem.

*Id*.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse

---

[3] The factors to be considered under 42 Pa.C.S.A. § 9721(b) include: the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. **See** 42 Pa.C.S.A. § 9721(b).

- 13 -

of discretion. *See Fullin*, 892 A.2d at 847. In this context, an abuse of discretion is not shown merely by an error in judgment. *See id*. Rather, an appellant must establish by reference to the record that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. *See id*.

The sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference, as it is the sentencing court that is in the best position to view a defendant's character, displays of remorse, defiance, or indifference and the overall effect and nature of the crime. *See Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted). As we have stated, "[a] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002) (citation omitted). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id*. (citation omitted).

In addition, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed."

- 14 -

*Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citing

*Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988)).

Our review of the record reflects that, at Davis's sentencing, the trial court received and reviewed a presentence report, and no corrections were requested. N.T.,12/13/21, at 33-34. The trial court also heard argument from defense counsel. *See id*. at 35-37. Defense counsel observed that: Davis has been a model prison while in the county jail; Davis has a strong work history; and Davis has had an education beyond the high school level. *See id*. In addition, defense counsel discussed that the presentence report reflects a struggle with alcohol. *Id*. at 37.

Immediately prior to announcing the judgment of sentence, the trial court meticulously detailed its reasoning for imposing the sentence, which included a thorough discussion of all the relevant sentencing factors. *See id*. at 44-51. At the outset of its discussion, the trial court indicated that it had taken into consideration all of the information in the presentence report, which "would include [Davis's] history of substance abuse." *Id*. at 44. After noting Davis's alcohol usage over the course of time, the trial court observed that "[Davis] denies ever using illegal substances and has never participated in treatment." *Id*. The trial court also stated that it "believes a sentence of total confinement is necessary because [Davis] is in need of correctional treatment that can be best provided most effectively by his commitment to an institution." *Id*. at 51.

In addition, the trial court noted the following in addressing the sentencing issue in Davis's post-sentence motion: "[Davis] states the court failed to properly consider his rehabilitative needs and alcohol history. [Davis] is mistaken as the court specifically referenced [Davis's] history of alcohol consumption and noted he has never participated in any treatment." Order, 12/28/21, at 1 n.1.

We conclude the reasons the trial court offered for the sentence imposed were more than sufficient to conclude that the court properly considered all relevant factors in fashioning Davis's sentence, including Davis's history of alcohol usage. Also, because the trial court had been fully informed and relied upon the presentence report, we conclude the trial court did not abuse its discretion in creating the instant sentence. **Ventura**, 975 A.2d at 1133. Accordingly, Davis's claim that the trial court failed to consider the appropriate factors in imposing the sentence lacks merit.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/2023