J-S40006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROSALIO SUCHITE | : | |
| | : | |
| Appellant | : | No. 1588 EDA 2022 |

Appeal from the Judgment of Sentence Entered April 6, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0000028-2021

BEFORE:  PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED MARCH 16, 2023**

Rosalio Suchite brings this appeal from the judgment of sentence following his convictions for involuntary deviate sexual intercourse with a child. He is attempting to reverse his designation as a Sexually Violent Predator ("SVP") and to obtain resentencing for his judgment of sentence that he is alleging is excessive. We affirm.

In 2019, Suchite and his wife traveled with their two young sons from Guatemala to the United States. In May 2020, Suchite moved into a separate residence, where both of his sons visited him until September 2020. The boys disclosed that during the visits Suchite repeatedly sexually abused them. Investigators were contacted and Suchite was arrested in November 2020. He was charged with two counts each of Rape of a Child, Involuntary Deviate Sexual Intercourse with a Child, Aggravated Indecent Assault of a Child,

Aggravated Indecent Assault — Complainant is less than 13 years of age, and Indecent Assault — Complainant is less than 13 years of age.

On August 27, 2021, Suchite entered a counseled, open guilty plea to two counts of Involuntary Deviate Sexual Intercourse with a Child, and the Commonwealth *nolle prossed* the remaining charges as part of the plea agreement. The trial court ordered the preparation of a presentence investigative report ("PSI") and an assessment by the Pennsylvania Sexual Offenders Assessment Board ("SOAB") for a determination of whether Suchite fits the criteria of an SVP.

On April 6, 2022, the trial court conducted an SVP hearing and a sentencing hearing. At the SVP portion of the hearing the Commonwealth presented the report and detailed testimony of Kristen F. Dudley, Psy.D. ("Dr. Dudley"), a licensed clinical psychologist and member of the SOAB since 2016. Suchite presented testimony from Barry Zakireh, Ph.D., a licensed clinical psychologist and former member of the SOAB. At the conclusion of the SVP hearing, the court determined that the Commonwealth had met its burden of proving, by clear and convincing evidence, that Suchite should be classified as an SVP. Immediately after the trial court reached its SVP conclusion, the court sentenced Suchite to serve an aggregate term of incarceration of nineteen to forty years.

Suchite filed a timely post-sentence motion seeking reconsideration of his sentence. The trial court held a hearing and denied relief. This timely

appeal followed. Both Suchite and the trial court have complied with Pa.R.A.P. 1925. Suchite now presents issues challenging whether the Commonwealth properly established that he is an SVP and whether the trial court abused its discretion in fashioning his judgment of sentence.

Suchite first argues the trial court erred in finding that he is an SVP. *See* Appellant's Brief at 15-22. Suchite contends the Commonwealth failed to present clear and convincing evidence to support the finding. Suchite claims Dr. Dudley's testimony did not establish "that [Suchite] has an increased likelihood of reoffense." *Id*. at 19. He further alleges that "[t]he Commonwealth's own expert concedes that, with the treatment which he is required to receive as a condition of this sentence, [Suchite] will no longer be likely to reoffend." *Id*. at 20. We disagree.

When considering the sufficiency of the evidence to support an SVP designation, we apply the following standard of review:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is an SVP. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015) (citation and brackets omitted).

- 3 -

SORNA[1] defines an SVP as an individual who has been convicted of one of the enumerated offenses, and "who is determined to be a[n SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. Further, an act is considered "predatory" under SORNA if it is "directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id*.

Section 9799.24(a) of SORNA provides that "a court shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S.A. § 9799.24(a); *see also id*. § 9799.12 (defining sexually violent offense). Following the entry of such an order, the SOAB is responsible for conducting an assessment to determine whether the individual should be classified as an SVP. *Id*. § 9799.24(b). The assessment must consider the following fifteen factors:

> whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s);

---

[1] SORNA stands for Pennsylvania's Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10-9799.41.

whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending.

***Hollingshead***, 111 A.3d at 190 (citation omitted); ***see also*** 42 Pa.C.S.A. § 9799.24(b)(1)-(4). After the SOAB completes its assessment, the trial court holds a hearing to "determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n SVP]." ***Id***. § 9799.24(e)(3).

Here, the trial court stated that "the Commonwealth clearly and convincingly met its burden of establishing that [Suchite] met the statutory criteria to be classified as an SVP pursuant to Pennsylvania statutory and decisional law." Trial Court Opinion, 8/5/22, at 19. Our review of the record agrees with this observation.

During the SVP hearing, Dr. Dudley offered detailed testimony regarding her assessment of Suchite. Addressing the initial seven factors, Dr. Dudley noted that this matter involved multiple victims, Suchite did not exceed the means necessary to achieve the offenses, the nature of the sexual contact was sodomy to the point of ejaculation, the relationship between Suchite and the victims was significant because he is their biological father, and the age of the victims, 7 and 4 years old, is significant because they are too young to engage in sexual activity with anyone. ***See*** N.T., 4/6/22, at 11-13. These five assessment factors suggest an SVP classification. ***See id.*** at 19. The remaining

two factors offer some mitigation as Dr. Dudley observed that there was no unusual cruelty displayed during the commission of the crimes and, aside from their ages, the victims were of normal mental capacity. *See id*. at 13.

Dr. Dudley also addressed the three factors pertaining to Suchite's prior offense history. She noted that Suchite has no known criminal history. *See id*. at 13-14. Regarding completion of prior sentences, Dr. Dudley observed that because Suchite lacked a known criminal history, the completion of prior sentences was not a relevant factor. *See id*. at 14. Dr. Dudley further stated that, in relation to participation in sexual offender programs, "[b]ecause [Suchite] has no criminal history and no criminal history of sexually offending, there was no legal reason for him to have attended treatment of any kind." *See id*.

The next four factors concern the characteristics of the individual being assessed. Dr. Dudley offered testimony reflecting upon Suchite's age of 28 at the time of the report and its relevance because "literature suggests that defendants under the age of 30 at the time of the arrest and conviction have a statistically greater risk of reoffense compared to older defendants." *Id*. Also, one of the victims reported that Suchite smoked marijuana, but it is unknown whether Suchite was using any illegal drugs at the time of the offenses. *See id*. at 15. Further, Dr. Dudley discussed Suchite's mental illness, disability, or abnormality with a detailed explanation concerning how she reached the diagnosis of Pedophilic Disorder, incest only. *See id*. at 15-17.

Dr. Dudley also noted that, based on the information that she had it was unknown what behavioral characteristic contributed to Suchite's conduct. *See id*. at 16. In addition, Dr. Dudley explained that, in reaching the diagnosis, factors considered to be important included the age of the victims, the three-year span over with the abuse occurred, the fact that Suchite warned the victims not to tell anyone. *See id*. at 16-17.

Finally, Dr. Dudley offered the following to support her opinion that there is an increased risk of Suchite reoffending: "By virtue of the diagnosis of Pedophilic Disorder, by virtue of having acted upon it, … he is at higher risk of reoffending. There is hope that, … if he receives treatment that he will be able to learn to manage his impulses, … control his deviate sexual impulses, but at present there is no known cure and he remains a risk." *Id*. at 18. Dr. Dudley's testimony, viewed as a whole, was sufficient to support a finding that Suchite is an SVP.

Nevertheless, Suchite highlights Dr. Dudley's concession that, "with treatment …, Suchite will no longer be likely to reoffend." Appellant's Brief at 20. However, that is a misrepresentation of the above-cited testimony offered by Dr. Dudley. Rather, Dr. Dudley opined that "[t]here is hope" treatment could assist Suchite in learning to "manage his impulses" and "control his deviate sexual impulses." Dr. Dudley's "hope" is not a concession that treatment will result in Suchite being no longer likely to reoffend.

In addition, Dr. Dudley offered an assessment concerning whether Suchite demonstrated predatory behavior. She stated, "[Suchite] engaged in anal sex with both of his biological children beginning when they were 5 and 4-years old, [respectively]. He sodomized them on many different occasions when they would visit him at his home. He engaged in sexual activity with his children – when [Suchite] engaged in sexual activity with his children, he exploited his relationship with them in whole or in part for the purpose of his own sexual gratification." *Id*. at 19. As the trial court opined, "[Suchite's] actions toward his children unquestionably meet the definition of predatory behavior for the purposes of 42 Pa.C.S. Section 9799.12." Trial Court Opinion, 8/5/22, at 21. Consequently, Dr. Dudley ultimately offered her opinion that Suchite "does meet [the] criteria to be classified as a[n SVP]." *Id*. at 19.

Upon review, we conclude that the evidence presented at the SVP hearing, viewed in the light most favorable to the Commonwealth, supports the trial court's finding that Suchite should be classified as an SVP. ***See Hollingshead***, 111 A.3d at 189. As the trial court observed,

> Dr. Dudley provided clear and convincing testimony as to not only [Suchite's] mental abnormality, but also as to the presence of predatory behavior. Her conclusions were wholly supported not only by the evidentiary record, but by common sense as well. Accordingly, [the trial court] found that the Commonwealth clearly and convincingly met its burden of establishing that [Suchite] suffers from a mental abnormality, and that he engaged in predatory behavior. [Suchite] therefore undeniably meets the criteria to be classified as an SVP pursuant to Pennsylvania statutory and decisional law.

Trial Court Opinion, 8/5/22, at 22. We may not disturb the trial court's credibility determinations on appeal. *See Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa. Super. 2006) (stating that "[i]t is not for this Court to overturn the credibility determinations of the fact-finder."). Further, our review confirms that Dr. Dudley's testimony, which was credited by the trial court, was sufficient to support her conclusion. Accordingly, we cannot grant Suchite relief on this issue.

Suchite last argues that the trial court erred in fashioning his sentence. *See* Appellant's Brief at 23-29. Suchite claims the trial court failed to consider his rehabilitative needs, history and character, such as his troubled upbringing, when it imposed a sentence that was excessive and unduly harsh. *See id*. at 27. Further, he alleges that the court only relied upon the nature of the offense and other improper factors, such as family incidents involving behavior for which Suchite had never been charged. *See id*. at 27-29. Accordingly, he asserts that the trial court failed to consider pertinent factors in forming his sentence.

Our standard of review is one of abuse of discretion. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

It is well settled there is no absolute right to appeal the discretionary aspects of a sentence. *See Commonwealth v. Hartle*, 894 A.2d 800, 805

(Pa. Super. 2006). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *See Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation and brackets omitted).

Here, the first three requirements of the four-part test are met. Suchite brought an appropriate appeal, filed a post-sentence motion, and included in his appellate brief the necessary concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). We next determine whether he has raised a substantial question requiring us to review the discretionary aspects of the sentence imposed.

Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case

basis. *See Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *See Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). Rather, an appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *See Commonwealth v. Ferguson*, 893 A.2d 735, 737 (Pa. Super. 2006).

In his Rule 2119(f) statement, Suchite argues the trial court abused its discretion by failing to consider certain mitigating factors, including Suchite's family history, age and rehabilitative needs, when it imposed an unduly excessive aggregate sentence. *See* Appellant's Brief at 23-24. This Court has held that an assertion that a sentence was excessive and that the trial court failed to properly consider the factors set forth in 42 Pa.C.S.A. § 9721(b)[2] raises a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). *See also Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question") (internal citation omitted).

---

[2] The factors to be considered under 42 Pa.C.S.A. § 9721(b) include: the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. *See* 42 Pa.C.S.A. § 9721(b).

We therefore grant permission to appeal and proceed to review the merits of this issue of Suchite's sentencing claim.

In his brief, Suchite argues that the trial court "did not give any consideration to the [Suchite's] character, history or condition but focused solely on the nature of the crimes." Appellant's Brief at 27. Specifically, Suchite offers the following concerning his troubled history and upbringing:

> [Suchite] grew up in Guatemala where he had no formal education and was forced to work as a child. N.T. 4/6/22, p. 74-75. Throughout his testimony, [Suchite] repeatedly expressed remorse for his actions. [Suchite] is a young man with no prior criminal record. Id. at 77. Furthermore, [Suchite] presented testimony regarding his traumatic upbringing. He described a long history of childhood abuse and indicated that his stepfather abused both [Suchite] and his mother and ultimately tried to kill [Suchite]. (N.T. 4/6/22, p. 74).

*Id*. at 26. To further elaborate on his traumatic past, Suchite refers to his own testimony at the sentencing hearing pertaining to witnessing his stepfather's killing at the hands of a gang. **See id**. at 27.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. **See Fullin**, 892 A.2d at 847. In this context, an abuse of discretion is not shown merely by an error in judgment. **See id**. Rather, an appellant must establish by reference to the record that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. **See id**.

The sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference, as it is the sentencing court that is in the best position to view a defendant's character, displays of remorse, defiance, or indifference and the overall effect and nature of the crime. *See Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted). As we have stated, "a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002) (citation omitted). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id*. (citation omitted).

In addition, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citing *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988)).

Our review of the record reflects that, and it is undisputed that, at Suchite's sentencing, the trial court received and reviewed a presentence report, considered argument from defense counsel, heard Suchite's allocution, and received argument from the Commonwealth. Prior to announcing the judgment of sentence, the trial court detailed its reasoning for imposing the

sentence, which included a thorough discussion of the relevant sentencing factors and evinced an understanding of Suchite's history and a full grasp of the crimes related to these convictions. *See* N.T., 4/6/22, at 81-88. In addition, the trial court stated the following at the hearing addressing Suchite's post-sentence motion: "I certainly gave great consideration to the sentence before I imposed it, believe me, great consideration to it. And as I stated on April 6th, I read the PSI report a number of times, I reviewed the facts, and I gave great thought to all the factors [that] we, as a [c]ourt, are required to balance when imposing sentence. It's very rare that I've imposed anything close to a maximum sentence, truthfully, but it was appropriate in this case, unfortunately." N.T., 5/19/22, at 12.

In its written opinion, the trial court offered the following summation to support the sentence imposed:

> The notes of testimony from [Suchite's] Sentencing Hearing and Reconsideration Hearing demonstrate that this [c]ourt considered all relevant factors during sentencing, and appropriately fashioned a balanced sentence based on those factors.[14] While we recognize that [Suchite] arguably exhibited some degree of remorse for his actions and acknowledged that his actions affected his children, this alone failed to substantially ameliorate many of the other, more pertinent factors presented for this Court's consideration. Simply stated, [Suchite] took advantage of his own young vulnerable children and violently sexually abused them for his own gratification while knowing it was wrong to do so.
>
> [14] As described in the recent Superior Court decision in Commonwealth. v. Velez, 273 A.3d 6 (Pa. Super. 2022), we did not solely consider the severity of the crimes. We evaluated a variety of mitigating and other

sentencing factors, including [Suchites's] rehabilitative needs.

Trial Court Opinion, 8/5/22, at 14-15.

We conclude the reasons the trial court offered for the sentence imposed were more than sufficient to conclude that the court properly considered all relevant factors in fashioning Suchite's sentence. Also, because the trial court had been fully informed and relied upon the presentence report, we conclude the trial court did not abuse its discretion in creating the instant sentence. *Ventura*, 975 A.2d at 1133. Accordingly, Suchite's claim that the trial court failed to consider the appropriate factors in imposing the sentence lacks merit.

Judgment of sentence affirmed.

*Judgment Entered.*

_Joseph D. Seletyn, Esq._
*Prothonotary*

Date: _3/16/2023_